

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN -6 2016

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE MONITORING OF A GLOBAL POSITIONING SYSTEM MOBILE TRACKING DEVICE ASSIGNED TO: THE SPRINT CORPORATION TELEPHONE ASSIGNED TO PERSONAL TELEPHONE NUMBER 972-589-6082 ("TARGET CELLPHONE") | No. 4:16MJ- 003 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, George Ramirez, a Special Agent (SA) with Homeland Security Investigations (HSI) in Dallas, Texas, being duly sworn, do hereby state as follows:

### INTRODUCTION AND AGENT BACKGROUND

2.   I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned call number (972) 589-6082 ("**TARGET CELLPHONE**") and Electronic Serial Number (ESN/MSN) unknown to date, whose service provider is SPRINT CORPORATION, a wireless telephone service provider headquartered at SPRINT, 6480 Sprint Parkway, Overland Park, Kansas 66251. The **TARGET CELLPHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

Affidavit in Support of an Application for Search Warrant – Page 1

3. I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations and have been so employed for more than 30 years. During my law enforcement career I have participated in the investigation of a variety of criminal offenses, including, complex narcotics organizations, human smuggling/trafficking organizations, domestic/international terrorism, wire fraud, and financial crimes. I have often acted in an undercover capacity in human smuggling, fraud, and narcotics investigations. I have also participated in all of the traditional methods of investigations, including, but not limited to, electronic surveillance, physical surveillance, witness and subject interviews, the use of search warrants, the use of confidential informants, the use of pen registers, and the use of undercover agents. In the course of such investigations, I have made numerous arrests. I am also familiar with some of the methods by which narcotics traffickers communicate and code words commonly used by narcotics traffickers.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 18 U.S.C. § 1956(h) (money laundering and conspiracies to do the same) have been committed, are being committed, and will be committed by Uriel LOYA, the user of the **TARGET**

**CELLPHONE** and other unknown associates. Upon information and belief, and as explained in greater detail below, the Sprint cellular telephone bearing number (972) 589-6082 (hereinafter the **TARGET CELLPHONE** has been used, and is presently being used, by Uriel LOYA, who is charged with Conspiracy to Launder Monetary Instruments, in violation of Title 18, United States Code, Section 1956, in Case No. 1:15 –cr- 0199 WTL-TAB, and whose whereabouts are currently unknown. There is also probable cause to believe that the location information described in Attachment B will constitute or lead to evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

6. Homeland Security Investigations has probable cause to believe that the **TARGET CELLPHONE** is currently being used by Uriel LOYA, who has a pending federal arrest warrant, and who is charged with Conspiracy to launder Monetary Instruments, in violation of Title 18, United States Code, Section 1956, in Case No. 1:15-cr-0199 WTL-TAB, and whose whereabouts are currently unknown.

7. From February 2008 through January 2016, Special Agents from Homeland Security Investigations, in the Northern District of Texas, and the Southern District of Indiana, investigated several individuals involved in the sale of illegal narcotics and launder of currency derived from the sale of such narcotics.

8. On October 15, 2014, Gualberto Rivera-Carrasco (Rivera-Carrasco), Noel Chavira-Garcia (Chavira-Garcia) and Hernan Bartolo Gorostieta (Gorostieta) were

Affidavit in Support of an Application for Search Warrant – Page 3

charged by indictment in the Southern District of Indiana for violations of 21 U.S.C. § 846, Conspiracy to Possess and Distribute Controlled Substances and 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Controlled Substances. On March 17, 2015, Gualberto and Gorostieta were charged by superseding indictment with one count of 18 U.S.C. § 1956(h) Concealment Money Laundering Conspiracy and four counts of 18 U.S.C. § 1956(a)(1)(B)(i) Concealment Money Laundering. Gualberto, Chavira-Garcia, and Gorostieta have all entered into plea agreements with the United States as a result of this indictment, and are pending sentencing.

9. On April 12, 2013, the Crandall Police Department in Texas arrested LOYA and Gorostieta on outstanding warrants after conducting a traffic stop. LOYA, Gorostieta and Omar Rivera-Carrasco (Gualberto and Julio's brother) were traveling in Gorostieta's Dodge Ram pickup truck and LOYA was driving the truck. During an inventory of the vehicle following their arrest, the police officer found a total of $6,260 in cash and one 100mL bottle of Lidocaine Hydrochloride Injectable 2% (Lidocaine). LOYA told the officer he uses the Lidocaine on horses but did not have a prescription for the medication and was not a veterinarian. Included in the $6,260, the officer found a stack of cash totaling $4,800 and asked LOYA where it came from. LOYA stated it was from a paycheck.

10. HSI Special Agents reviewed LOYA's Chase bank account for a period prior to his arrest in Texas on April 12, 2013. Between December 18, 2012 and April 12, 2013, $11,910 in deposits and $6,900 in withdrawals occurred in his account. Included in

Affidavit in Support of an Application for Search Warrant – Page 4

these amounts are a $5,000 cash deposit in Indianapolis on January 28, 2013 and subsequent cash withdrawal of $4,900 in Texas on the same day. LOYA's statement to the police officer in Texas that the $4,800 in cash was from a paycheck is not supported by the activity in LOYA's bank account. Other than the cash withdrawal of $4,900 on January 28, 2013 (from a cash deposit on the same day in Indianapolis of $5,000), LOYA only withdrew $2,000 from his bank account between December 18, 2012 and April 12, 2013 with the last withdrawal of $500 occurring on March 22, 2013. So the paycheck he referenced as being the source of the $4,800 in cash found by the police officer was not deposited into his bank account and withdrawn from his bank account in cash.

11. In August of 2013, HSI Special Agents and Task Force Officer (TFO) Neal interviewed a Confidential Source (CS) regarding a large scale marijuana distribution organization in the Indianapolis, Indiana area. The CS identified the head of this Indianapolis based marijuana distribution organization. The CS also identified a residence located at 1531 Mary Drive, Indianapolis, Indiana, (Mary Drive residence) as a location that the Indianapolis based drug trafficking organization (DTO) utilized as a "stash house" for marijuana and proceeds from marijuana sales. The CS reported that Hispanic males, referred to by the CS as the "Texans," would stay at that location and oversee deliveries of marijuana.

12. On December 13, 2013, surveillance was being conducted at the Mary Drive residence and TFO Neal observed a red Chevy pickup truck pulling a large black utility trailer arrive at the residence. TFO Neal observed two known members of the

Affidavit in Support of an Application for Search Warrant – Page 5

DTO offload approximately 100 small white boxes from the utility trailer and apparently carry the boxes inside the residence. After the trailer was unloaded of the boxes, the two males departed the residence in the red Chevy truck pulling the utility trailer.

13. The next day, SA Rodriguez observed two known members of the Indianapolis based DTO enter a maroon Chevy Impala and depart the Mary Drive residence. At the same time, a known member of the DTO left the Mary Drive residence in a silver Dodge pickup truck (registered to LOYA). Then TFO Neal and SA Rodriguez observed two known members of the DTO at the Mary Drive residence, loading into the bed of a white Ford pickup truck, what appeared to be the same white boxes offloaded at the residence the previous day. When the white pickup truck was loaded with boxes, it departed and then returned empty a short time later. The same known members of the DTO again loaded the bed of the truck with white boxes and departed.

14. On January 8, 2014, TFO Neal and SA Rodriguez were conducting surveillance on the Mary Drive residence and observed a gold 2006 Nissan Pathfinder (Texas plate: NXG963; Vin #5N1AR18U16C601640; Registered to Nora I. Lara, 1149 College Street, Grand Prairie, Texas, 75050) parked in the driveway. Over the next ten days, TFO Neal and SA Rodriguez observed the Pathfinder leave for short periods of time and return to the Mary residence, until it departed on January 18, 2014 and did not return.

15. On January 22, 2014, the Pathfinder crossed the international border from Juarez, Mexico into the United States at the El Paso, Texas Paso Del Norte Port of Entry

Affidavit in Support of an Application for Search Warrant – Page 6

(POE) and later passed through the Customs and Border Protection, Sierra Blanca, Texas Border Patrol Checkpoint. At the time of the entry, Chavira-Garcia was driving the Pathfinder.

16. On February 11, 2014, TFO Neal and SA Rodriguez were conducting surveillance on the Mary Drive residence and observed the Pathfinder parked in the driveway. The Pathfinder crossed the international border from Juarez, Mexico into the United States on January 22, 2014. Also at the Mary Drive residence was a black Dodge pickup truck (Texas Plate: BK59863) with a large black utility trailer connected to it. In addition, they observed a 2004 silver Dodge pickup (Texas Plate: BF48675, registered to LOYA) which had been parked at the residence since January 18, 2014, and had been observed at the Mary Drive residence on December 14, 2013. Later on February 11, 2014, Task Force Officer Stephanie Humerickhouse (TFO Humerickhouse) conducted a traffic stop on the 2004 silver Dodge pickup after she observed the vehicle weaving in and out of lanes and the rear plate obstructed with snow. The driver of the vehicle identified himself as Rivera-Carrasco, who provided registration paperwork to TFO Humerickhouse showing the registered owner as LOYA.

17. During the traffic stop, law enforcement observed the black Dodge pickup truck previously parked at the Mary Drive residence, pull up and park near TFO Humerickhouse. After several minutes of watching the traffic stop, Chavira-Garcia stepped out of the black Dodge pickup truck and approached TFO Humerickhouse. Chavira-Garcia told TFO Humerickhouse that he and Rivera-Carrasco work together,

**Affidavit in Support of an Application for Search Warrant – Page 7**

explained the vehicle was a work truck, and asked how he and Gualberto could register the vehicle in Indiana. Because the registration was expired as of November 2013, Rivera-Carrasco was not the registered owner and he claimed the registered owner, LOYA, could not be contacted, TFO Humerickhouse ordered the 2004 silver Dodge pickup truck be towed. At approximately 2:00 p.m., an Indiana State Police Trooper utilized his K-9 partner to conduct a sniff of the free air around the unoccupied 2004 silver Dodge pickup truck, while it was parked at the tow lot. The K-9, trained in the detection of the odor of various controlled substances, alerted on the driver's door of the 2004 silver Dodge pickup truck. Contrary to Rivera-Carrasco's assertion the owner (LOYA) could not be reached on February 11, 2014, cellular telephone toll analysis indicates a phone subscribed to Rivera-Carrasco was in contact with cellular phone (469) 442-9304 subscribed to LOYA, by means of voice usage on that same date.

18. AT&T subscriber information confirmed that phone (469) 442-9304 was subscribed to Uriel Loya at 914 North Carrier Parkway, Grand Prairie, Texas 75050 with a service start date of May 31, 2012. Additional telephone toll analysis of phone (469) 442-9304 revealed that the internal contact name of "Uriel" listed as (214) 986-2493 as that of LOYA. On January 10, 2015 a phone examination report of (915) 600-9092 used by a known associate of LOYA, Noe Andrade Cepeda, revealed that Andrade Cepeda listed contact information for phone (214) 986-2493 as "Uriel."

19. On June 4, 2015, Sprint subscription information was received listing the subscriber of (214) 986-2493 as Ximena Loya at 914 North Carrier Parkway, Grand

**Affidavit in Support of an Application for Search Warrant – Page 8**

Prairie, Texas 75050. The active status date listed in the subscription information was January 7, 2015; corroborating dates of use found in the phone examination report. The cancellation date listed in the subscription information for phone (214) 986-2493 was March 21, 2015.

20. Sprint subscriber records information listed the subscriber of (972) 589-6082 ("**TARGET CELLPHONE**") again as Ximena Loya at 914 North Carrier Parkway, Grand Prairie, Texas 75050 with an active status date of March 21, 2015. The same telephone toll analysis method was then used to confirm Uriel Loya as the user of **TARGET CELLPHONE**, and determined that LOYA was using phone (214) 986-2493 until the cancellation date of March 21, 2015 at which time he then began using (972) 589-6082 activated on the same date.

21. Throughout the investigation HSI Special Agent verified that LOYA registered several telephonic numbers utilizing the subscriber information of "Ximena" LOYA with the following address: 914 North Carrier Parkway, Grand Prairie, Texas 75050. HSI Special Agent received information from Sprint PCS indicating that on March 21, 2015 LOYA activated the number (972) 589-6082 ("**TARGET CELLPHONE**").

22. On November 25, 2015, a search warrant was obtained on **TARGET CELLPHONE** in United States District Court for the Northern District of Texas, Fort Worth Division under number 4:15-MJ-518 before United States Magistrate Judge Cureton. The order was executed with Sprint on the same date, and the receipt of telephonic pings was initiated as ordered.

23. On December 2, 2015, after several attempts to locate LOYA, surveillance activities continued in the vicinity of the ping location information. At approximately 12:44pm, a white 2006 Dodge Dually Pick up bearing Texas license plate AC4 6482 registered to Gilberto Martinez and Luisa Chacon at 2002 Aldredge Drive Austin, Texas, was observed departing 7251 Bennett Lawson Mansfield, Texas occupied by one Hispanic male. The vehicle was followed into Mansfield, Texas until such time that an updated ping indicated that the location had changed in accordance with the travel of the vehicle. The vehicle was followed to the Home Depot where the occupant exited the vehicle and entered the store. The occupant later returned to the vehicle at which time LOYA was positively identified as the driver. LOYA was not arrested at that time due to lone officer safety considerations and operational planning.

24. On December 13, 2015, ping location information indicated that LOYA had departed the Fort Worth area at approximately 10:45pm and was heading north towards Indianapolis. LOYA continued to travel north on Interstate 35 and eventually reached a final destination of Kansas City, Missouri at approximately 8:56am on December 14, 2015 where he remained for an extended period of time. LOYA eventually departed

Kansas City and returned to the Fort Worth, Texas area on December 18, 2015 where he remained until the ping order expired on December 25, 2015.

25. Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that LOYA has utilized telephonic devices in furtherance of criminal activity and the information obtained from the requested disclosure of the timing advance data (GPS location) will substantially assist investigators in locating, surveilling, and arresting LOYA.

26. The investigation has demonstrated that the **TARGET CELLPHONE** is being used by Uriel LOYA, who is believed to be residing at an unknown location within the Northern District of Texas, in or near Mansfield, Texas. It is critical that the investigative team be able to locate and monitor the movements of the **TARGET CELLPHONE** thereby assisting in the location and arrest of Uriel LOYA. Your affiant believes that the requested authorization extension would be a valuable asset in achieving the overall goals of the investigation.

## TECHNICAL BACKGROUND

27. In my training and experience, I have learned that SPRINT CORPORATION is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service. Because SPRINT CORPORATION provides service to the **TARGET CELLPHONE**, SPRINT CORPORATION should be capable of collecting information

Affidavit in Support of an Application for Search Warrant – Page 11

about the location of the **TARGET CELLPHONE**, including by initiating a signal to determine the location of the **TARGET CELLPHONE** on SPRINT CORPORATION's network or with such other reference points as may be reasonably available. This type of data is sometimes referred to as E-911 Phase II data, GPS data, or latitude-longitude data.

28. In my training and experience, I know that providers of cellular telephone service also collect data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular telephone. This information can reveal the general location of a particular cellular telephone.

### AUTHORIZATION REQUEST

Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until requested by the United Sates Attorney's Office after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET CELLPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. Moreover, to the extent that the

Affidavit in Support of an Application for Search Warrant – Page 12

warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

I further request that the Court direct SPRINT CORPORATION to disclose to the government any information described in Attachment B that is within the possession, custody, or control of SPRINT CORPORATION. I also request that the Court direct SPRINT CORPORATION to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with SPRINT CORPORATION's services, including by initiating a signal to determine the location of the **TARGET CELLPHONE** on SPRINT CORPORATION's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate SPRINT CORPORATION for reasonable expenses incurred in furnishing such facilities or assistance.

I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET CELLPHONE** outside of daytime hours.

I further request that the Court order apply to the **TARGET CELLPHONE** number listed in this application, and also to any changed telephone numbers subsequently assigned to or used by, the target instrument bearing the same ESN/MSN or International Mobile

Subscriber Identifier (IMSI) as the **TARGET CELLPHONE**, or any changed ESN/MSN or IMSI subsequently assigned to the same telephone number as the **TARGET CELLPHONE**, within the 30 day period. The HSI, within five days of being notified of the change in the **TARGET CELLPHONE**, will report the change to the authorizing court by an in-camera submission to be placed under seal.

This Court has jurisdiction to issue the requested warrant under 18 U.S.C. § 2711(3)(A) because the court has jurisdiction over the offense being investigated. Furthermore, pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

George Ramirez
Special Agent
Homeland Security Investigations

Sworn to before me this 6th day of January, 2016 at 9:01 p.m. in Fort Worth, Texas.

JEFFREY L. CURETON
United States Magistrate Judge

## ATTACHMENT A
### Property to Be Searched

1. The cellular telephone assigned call number (972) 589-6082 (**TARGET CELLPHONE**), whose wireless service provider is SPRINT CORPORATION, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.

2. Information about the location of the **TARGET CELLPHONE** that is within the possession, custody, or control of SPRINT CORPORATION.

**Attachment A – Page 1**

## **ATTACHMENT B**

### **Particular Things to be Seized**

All information about the location of the **TARGET CELLPHONE** described in Attachment A for a period of 30 days, during all times of day and night, beginning on date of this warrant. "Information about the location of the **TARGET CELLPHONE** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of SPRINT CORPORATION is required to disclose the Location Information to the government. In addition, SPRINT CORPORATION must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with SPRINT CORPORATION's services, including by initiating a signal to determine the location of the **TARGET CELLPHONE** on SPRINT CORPORATION's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate SPRINT CORPORATION for reasonable expenses incurred in furnishing such facilities or

Attachment B – Page 1

assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See* 18 U.S.C. § 3103a(b)(2).

**Attachment B – Page 2**